# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re:   AARON MANELOS,                                       No. 13-04-15994 ML

       Debtor.

## MEMORANDUM OPINION

THIS MATTER is before the Court on confirmation of Debtor's proposed Chapter 13 plan.  Dale Renner and Annette Renner (together, the "Renners"), creditors who obtained a judgment against the Debtor determining that their debt is non-dischargeable under 11 U.S.C. § 523(a)(4), objected to confirmation of the Debtor's plan, asserting that Debtor's plan was not filed in good faith.   The Renners also assert that the plan is not feasible and fails to meet the best interest of creditors test contained in 11 U.S.C. § 1325(a)(4).  The Chapter 13 Trustee also objected to confirmation of the Debtor's plan, echoing the concerns raised by the Renners in their objection and supplemental objection to the Debtor's plan, and likewise asserting that the plan is not feasible and fails to meet the best interest of creditors test.   The Chapter 13 Trustee also objected to the Debtor's claimed exemptions, asserting, *inter alia,* that the property in which the Debtor claims a homestead exemption may not be his residence and is of much greater value than reflected on the Debtor's statements and schedules.

Debtor converted this Chapter 7 bankruptcy proceeding to Chapter 13 after receiving a discharge.  The Chapter 7 Trustee presently holds funds from the liquidation of assets that occurred during the pendency of the Chapter 7 proceeding.  Debtor proposes that these funds be contributed to his plan. Following the confirmation hearing, the Court directed the parties to submit briefs on the following issues: 1) whether the funds held by the Chapter 7 Trustee should

1

be turned over to the Chapter 13 Trustee for distribution under the Chapter 13 plan; 2) whether creditors of the Chapter 7 estate should receive a distribution; and 3) whether the Debtor can receive a discharge following the completion of his Chapter 13 plan in view of the fact that he was already granted a discharge in this proceeding under Chapter 7 of the bankruptcy code.

BACKGROUND AND FACTS

Debtor filed a voluntary petition under Chapter 7 of the bankruptcy code on August 16, 2004. Debtor listed certain real property on his Schedule A. identified as "residential land located at Catwalk Rd. Catron County" ("Property") valued at $15,000.00. Debtor later amended his Schedule A to reflect a lien against the Property in the amount of $13,354.74. This lien is a lien filed by the Internal Revenue Service ("IRS"). (*See* Exh 6). Debtor claimed an exemption in the Property in the amount of $15,000.00 on his Schedule C. The Chapter 7 Trustee objected to the Debtor's exemption, asserting that the Property was not the Debtor's homestead. (*See* Docket # 30). The Chapter 13 Trustee also objected to the Debtor's exemption in the Property, asserting that the Property may not be the Debtor's residence and may have value far in excess of the value reported in Debtor's schedules. (*See* Docket # 59). At trial, a local real estate broker testified that she estimated that the market value of the Property is approximately $110,000.00, that the Debtor's property is valuable because it abuts a national forest area, and that she had sold property in that area for between $3200.00 and $7,000.00 per acre, depending upon the number of acres in the parcel (a larger parcel reduces the price per acre). The Property consists of twelve acres, but does not have developed water rights. A Notice of Valuation issued by Catron County reflects a value of $3228.00 for the Property. (*See* Exhibit 5).

In September of 2004, following the meeting of creditors, the Chapter 7 Trustee filed a

2

notice of assets, and a Notice of Possible Dividend was mailed to all creditors directing them to file proofs of claim within 90 days after the mailing of the notice.[1] Creditors, including the Internal Revenue Service ("IRS"), filed proofs of claim.[2] The Debtor has not filed an objection to the claim of the IRS. During the pendency of the Chapter 7 proceeding, the Renners obtained a judgment against the Debtor in Adversary Proceeding No. 04-1200 M in the amount of $95,724.29, plus interest at the rate of 8.75% per annum, which debt was declared non-dischargeable. (*See* Adversary Proceeding No. 04-1200 M; Docket # 39). The Debtor received a discharge on November 29, 2004. (*See* Docket # 31).

The Chapter 7 Trustee liquidated many but not all of the Debtor's non-exempt assets, but before all disbursements were made, and after the Debtor had agreed to the entry of a judgment of non-dischargeability of the debt of the Renners, the Debtor filed a motion to convert his bankruptcy proceeding to Chapter 13. Just prior to the filing of the Debtor's motion to convert this proceeding, the Debtor filed a second Chapter 13 proceeding, as Case No. 13-05-21449 SL ("Second Proceeding"). The Second Proceeding was dismissed on December 29, 2005 based on Debtor's failure to file statements and schedules, failure to provide documents to the Chapter 13 Trustee, and failure to file a plan. (*See* 13-05-21449 SL - Docket # 13). This proceeding was converted to Chapter 13 on November 29, 2005, some two weeks after the judgment determining

---

[1]The Notice of Possible Dividend provided further that a proof of claim filed by a governmental unit must be filed by the LATER of 1) 179 days after the order for relief or 2) 90 days after the mailing of the notice - 12/25/04.

[2]The IRS filed a proof of claim on March 4, 2005, after expiration of the later 179 day period contained in the notice. IRS subsequently amended its proof of claim on February 10, 2006, and again on October 5, 2006, ultimately claiming $5,913.28 as unsecured, non-priority claim, and $25,007.29 as an unsecured, priority claim. (*See* Claim No. 24-2).

3

the Renners' debt non-dischargeable was entered and some fifteen months after the case was filed. After conversion, the Chapter 7 Trustee filed an Individual Estate Property Record and Report reflecting a balance of $33,053.00 from the liquidation of non-exempt assets. (*See* Docket # 41).

The Debtor late filed a Chapter 13 plan on January 6, 2006. Debtor proposes a thirty-six month plan with payments as follows: $700.00 for months 1 - 5; $1075.00 for months 6 - 36. The plan also provides that Debtor will contribute 85% of any net income that he earns from carpentry work in excess of the $1,000.00 per month to the trustee as listed in Schedule I. Debtor proposes to submit a semi-annual report reflecting income from carpentry work, less gross-receipts taxes and other expenses, in order to compute the additional amount to be contributed to the plan. The plan proposes to value the collateral of AmBank in the amount of $16,680.00 and pay such claim in full plus interest. The plan also proposes to pay the IRS $13,354.74 plus interest. Attorneys' fees listed in the plan are $1500.00. The plan also reflects a payment to Joann Bock in the amount of $200.00 per month for thirty-six months. At the confirmation hearing, the Debtor agreed to extend his plan to 37 months, and conceded that the claim of Joann Bock is not a secured claim, so that the line-item budgeted expense of $200.00 on Debtor's Schedule J will no longer be paid, and the monthly plan payments will increase by $200.00. Debtor's Amended Schedules I and J reflect net monthly income in the amount of $697.00. At the final hearing on confirmation, Debtor testifies that he now typically works a forty-hour week as a carpenter and charges $16.00 per hour for his services.

## DISCUSSION

Under Chapter 13, confirmation of a chapter 13 plan is governed by 11 U.S.C. § 1325.

4

Among the confirmation criteria are: 1) that the plan must be feasible - 11 U.S.C. § 1325(a)(6); 2) that the plan must meet the best interest of creditors, such that unsecured creditors will not receive less under the plan than they would receive if the estate were liquidated under chapter 7 - 11 U.S.C. § 1325(a)(4); and 3) that the plan be proposed in good faith, 11 U.S.C. § 1325(a)(3). The debtor bears the burden of proof regarding the confirmation elements contained in 11 U.S.C. § 1325(a). *In re Ford,* 345 B.R. 713, 716 (Bankr.D.Colo. 2006) (citation omitted). Based on the facts and circumstances present in this case, the Court finds that even if the funds from the Chapter 7 trustee's prior liquidation of assets are used to fund the plan and the plan is feasible, it is not clear that the Debtor's plan meets the best interest of creditors test, and that in light of the factors for determining good faith enunciated by *Flygare*, the Court must find that the plan has not been proposed in good faith.

    1. Feasibility and Best Interest of Creditors

The feasibility requirement of 11 U.S.C. § 1325(a)(6) considers the debtor's ability to make all the payments called for under the plan. "[W]hen a debtor's budget shows a clear inability to make the proposed plan payments, the plan is not entitled to confirmation." 8 Collier on Bankruptcy ¶ 1325.07[1] (Alan N. Resnick and Henry J. Sommer, eds. 15th ed. rev. 2005). Debtor's plan proposes monthly payments of $900.00 for the first five months and $1275.00 for the following thirty-two months, plus 85% of any income in excess of $1000.00 per month earned from carpentry work.[3] Debtor's Schedules I and J reflect monthly disposable income of $697.00. Based on Debtor's schedules, the plan appears infeasible on its face. At trial, Debtor

---

[3]Debtor agreed at trial that the line item expense of $200.00 paid to Joann Bock will be contributed to the plan.

5

testified that he now works a forty-hour work week and earns $16.00 per hour. At that rate, Debtor's calculated gross monthly income is approximately $2,773.00. There was no testimony about the average net monthly income from this work, or an estimate of the anticipated additional amounts that would be contributed to the plan based on Debtor's additional commitment of 85% of any income in excess of $1000.00 per month from carpentry work, after deduction of associated gross receipts taxes. As of the date of the hearing, Debtor had not provided an accounting of his self-employment income to the Chapter 13 Trustee. Nevertheless, based on the testimony from the Debtor as to his increased income, it appears that Debtor can make the monthly payments proposed under the plan.

The plan proposes payment of the following claims: 1) AmBank in the amount of $16,680.00; and 2) Internal Revenue Service in the amount of $13,354.74. In addition, attorneys' fees in the estimated amount of $1500.00 as reported in the plan will be paid as an priority administrative expense, and the Chapter 7 Trustee has filed a claim for a priority administrative claim in the amount of $5100.75. Thus the total amount to be paid through the plan is $36,634.00.[4] The Chapter 13 Trustee points out that the IRS filed a proof of claim in the amount of $30,920.57, of which $25,007.29 is classified as a priority claim. Debtor asserts that the proof of claim filed by the IRS was untimely and was premised upon an estimated tax liability, yet the Debtor has not objected to the proof of claim. *See* 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.").

---

[4]This figure does not account for the interest (of 8.75% and 8% respectively on the claims of AmBank and the Internal Revenue Service) proposed under the plan, nor does it include the estimated Chapter 13 Trustee's commission on disbursements.

The plan base, excluding any additional amounts to be contributed from the Debtor's income from carpentry work in excess of $1,000.00 per month, totals $44,300.00.[5] If the priority claim of the IRS is $25,007.29 rather than the $16,680.00 as listed in Debtor's plan, the plan does not appear feasible. Debtor asserts that the $33,073.40 representing the proceeds from assets liquidated by the prior Chapter 7 trustee can be contributed to the plan, and that creditors of the bankruptcy estate, including creditors who filed proofs of claim while the case was pending under Chapter 7, would share in the distributions under the Chapter 13 plan. Thus the plan would be feasible. This Court agrees.

In *In re Mosby,* 244 B.R. 79 (Bankr.E.D.Va. 2000), the bankruptcy court considered whether a debtor who initially files a chapter 7 proceeding, may, after receiving a discharge, convert the case to chapter 13. *Mosby,* 244 B.R. at 81. The debtors sought to vacate their Chapter 7 discharge so that they could proceed in the same case after converting to Chapter 13. *Id.* In analyzing this issue, the bankruptcy court rejected the argument that a post-discharge conversion should not be allowed because once a discharge has been entered, there are no debts for a plan to pay[6], finding that "nothing in the Code suggests that a discharge eliminates the creditor's claim against the bankruptcy estate." *Id.* at 87 (citing *Board of Comm'rs of Shawnee Co., Kansas v. Hurley,* 169 F. 92, 94 (8th Cir. 1909) (remaining citations omitted). The

---

[5]This figure includes the additional $200.00 per month for months 6 - 37 representing the line-item expense to Joann Bock.

[6]A prior decision of this Court in *In re Rigales,* 290 B.R. 401 (Bankr.D.N.M. 2003), suggested that conversion of a Chapter 7 proceeding to Chapter 13 after the debtor received a discharge leaves the Chapter 13 proceeding with nothing to reorganized, since the debts have all been discharged. *Rigales,* 290 B.R. at 407-408. The Court held that 11 U.S.C. § 707(b) affords the debtor a one-time absolute right to convert, provided the debtor is otherwise eligible for relief under Chapter 13. *Id.* at 407.

7

discharge relieves the debtor of personal liability on the debt, but creditors retain their claims against the estate. *Id.* Thus, creditors whose debts are discharged do not "suddenly lose the right to receive their pro rata share of distributions" from the bankruptcy estate despite the entry of a discharge or the conversion of a case to another chapter. *Id.* Similarly, in *In re Carter,* 285 B.R. 61 (Bankr.N.D.Ga. 2002), the court found "that there is no specific bar within the Code to prohibit creditors' claims from being paid through a Chapter 13 plan, notwithstanding the fact that the debtor's personal liability for these claims has been extinguished." *Carter,* 285 B.R. at 68-69.

In this case, the Debtor proposes to contribute to the plan the funds representing the proceeds from the Chapter 7 trustee's liquidation of the Debtor's non-exempt assets in the amount of $33,073.33 which the Chapter 7 trustee did not disburse prior to the conversion of this case to Chapter 13. Based on the reasoning in *Mosby* and *Carter,* the Court finds that creditors who filed claims in the Chapter 7 proceeding should share in the distribution to creditors under the Debtor's Chapter 13 plan and that it is appropriate for the funds that the Chapter 7 Trustee turned over to the Chapter 13 Trustee to be disbursed under the Debtor's plan.[7] By including

---

[7]Disbursement after conversion to Chapter 13 of the proceeds from the Chapter 7 Trustee's liquidation of assets raises interesting questions about whether both the Chapter 13 trustee (since she would be making disbursements of the funds turned over by the Chapter 7 trustee) and the Chapter 7 trustee (who liquidated the assets for the benefit of the estate but did not make a disbursement prior to conversion) would be entitled to receive their respective full commission on those amounts. *See In re Rodriguez,* 240 B.R. 912, 914-916 (Bankr.D.Colo. 1999) (discussing various approaches, and concluding that the aggregate fees for the Chapter 7 and Chapter 13 trustee "may not exceed the amount set by the cap under section 326(a) as applied to the aggregate disbursements."). The Court does not reach this issue, however, because the Court finds that the Debtor's plan does not meet the good faith test under 11 U.S.C. § 1325(a)(3). For the same reason, the Court need not now determine whether the Debtor is entitled to receive a second discharge in the same case. *See Mosby,* 244 B.R. at 88 (noting that nothing in § 348 concerning the effect of conversion limits the effect of the prior discharge, and §

8

this amount in the Debtor's plan, the Debtor's plan is feasible.

Although the plan is feasible, the value of Debtor's homestead property raises concerns about whether the Debtor's plan meets the best interest of creditors' test embodied in 11 U.S.C. § 1325(a)(4). That section provides:

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.
>
> 11 U.S.C. § 1325(a)(4).

Application of the best interest of creditors test involves a calculation of the value of the property to be distributed to unsecured creditors as of the effective date of the plan, taking into account the chapter 13 administrative expenses, and comparing that figure to the amount which would be distributed to unsecured creditors if the estate were liquidated under a hypothetical chapter 7 case, taking into account the anticipated chapter 7 administrative expenses. *In re Dewey,* 237 B.R. 783, 788 (10th Cir. BAP 1999). If the amount to be distributed under the plan is equal to or greater than the amount that would be available if the estate were liquidated under a hypothetical Chapter 7 proceeding, the plan meets the best interest of creditors test. *Id.* In addition, the application of 11 U.S.C. § 1325(a)(4) requires capitalization of the projected payments to

---

1328 concerning discharge is conditioned only on the "'completion by the debtor of all payments under the plan.'")(quoting 11 U.S.C. § 1328(a)); *Carter,* 285 B.R. at 69 ("[T]he Court is not persuaded that the Code contains a *per se* prohibition against the receipt of two discharges in the same case."); *In re Oblinger,* 288 B.R. 781, 788 (Bankr.N.D.Ohio 2003) (acknowledging the awkwardness of issuing two discharges in the same case under different chapters, but concluding that "[t]here is nothing in the Bankruptcy Code that prohibits two discharges in the same case."). *But see, In re Hauswirth,* 242 B.R. 95, 95 (Bankr.N.D.Ga. 1999) (noting that "[a]ll but one of the Courts which have considered the issue have concluded that a debtor cannot obtain two discharges in the same case under two mutually exclusive chapters of the Bankruptcy Code.")(citations omitted).

9

unsecured creditors in order to compare the present value of the claim under the plan to the liquidation value of the claim. *See* 8 Collier on Bankruptcy ¶ 1325.05[2][b] (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2005) (noting that because § 1325(a)(4) mandates that the plan provide for unsecured creditors to receive a present value of not less than the liquidation value of such claim, "the court must capitalize the proposed payments . . . into an equivalent capital sum as of the effective date of the plan.").

Debtor reported on his statements and schedules that the value of the Property is $15,000.00, and he claims an exemption for the full value of the Property.[8] In addition, Debtor's amended Schedule A reflects a lien against the Property in the amount of $13,354.74. Application of the best interest of creditors test in this case essentially results in a comparison of the equity in the Property as of the petition date to the amount unsecured creditors might expect to receive under the plan.[9] However, in making this calculation, the Court is mindful that it should take into account the anticipated costs of sale and any administrative expenses the Chapter 7 trustee would incur in liquidating the assets. *See In re Gatton,* 197 B.R. 331, 332 (Bankr.D.Colo. 1996) (noting that Courts are not to mechanically determine the equity in nonexempt property, but must reduce that amount by the costs of sale and administrative expenses, determining what a hypothetical chapter 7 trustee would do).

---

[8]Although both the Chapter 7 Trustee and the Chapter 13 Trustee objected to the Debtor's claimed exemption in the Property, the objection to the Debtor's homestead exemption has not been resolved.

[9]The Debtor's statements and schedules indicate the following additional non-exempt assets: 1) a 1999 F250 truck valued at $6,000.00; and 2) a 1977 travel trailer valued at $100.00. In addition, at trial, the Debtor conceded that the PT Cruiser, valued at $7,850.00 on his amended Schedule B is not secured.

As discussed above, the plan, which will include the funds from the Chapter 7 Trustee's liquidation of non-exempt assets, appears sufficient to pay secured and priority claims, leaving approximately $32,400.00 available for disbursement to unsecured creditors.[10] If the value of the property is $110,000.00, Debtor's plan would need to provide that unsecured creditors would receive $81,646.00.[11] Using these figures the plan does not appear to meet the best interest of creditors' test even after taking into account the anticipated costs of sale and trustee commission.[12] Even if the Property is valued at $7,000.00 per acre, the plan does not appear to meet the best interest of creditors test.[13] On the other hand, if the Property is valued at $3,200.00 per acre, for a total value of $38,400.00, liquidation would yield approximately $10,045.00 (less costs of sale and trustee's commission), which is less than the projected disbursements to

---

[10]Plan base of $44,300.00 plus funds from Chapter 7 Trustee $33,073.40 = $77,373.40. Claims to be paid through the plan (without accounting for interest or Chapter 13 Trustee commissions) = 36,634.00 (if IRS's claim is $16,680.00 as stated in Debtor's plan) or $44,961.29 (if IRS's priority claim is $25,007.29). Thus, the amount available after payment of secured and priority claims (without accounting for interest) is between $32,412.11 and $40,739.40, less the Chapter 13 trustee's commission of ten percent. *See* 28 U.S.C. § 586(e)(1)(B).

[11]$110,000.00 less IRS lien in the amount of $13,354.00 plus Debtor's exemption (assuming Debtor is entitled to the exemption) in the amount of $15,000.00 = $81,646.00. *See In re Campbell,* 313 B.R. 313, 321-322 (10th Cir. BAP 2004) (noting that "although a claimed exemption is not colorable as a matter of law or is at least subject to a good faith objection, its allowance or disallowance will have no impact on the best interests of creditors test in § 1325(a)(4)").

[12]After applying a sales commission of 6%, and the Chapter 7 trustee commission provided under 11 U.S.C. § 326 (25% of the first $5,000.00 + 10% on the next $45,000.00 + 5% on the next $60,000.00 = $8750.00), the amount available from a hypothetical sale of the Property for $110,000.00 is $66.296.00

[13]$84,000.00 less $28,354.00 (Debtor's exemption plus IRS lien) = $55,646.00 (less sales commission and trustee's commission) is $48,196.00 if liquidated versus $32,400.00 (less Chapter 13 trustee's commission) projected under the plan.

11

unsecured creditors under the plan and would, therefore, satisfy the requirements of 11 U.S.C. § 1325(a)(4).

The real estate broker made her value estimate based solely on her experience selling property in the area and by viewing the Property from the road. And while the broker testified that prices in the area have generally been rising over the past few years, she did not value the Property as of the petition date. *See* 8 Collier on Bankruptcy ¶ 1325.05[2][a] (Alan N. Resnick and Henry J. Sommer, eds. 15th ed. rev. 2005) (stating that the hypothetical liquidation should be based on the value of non-exempt property as of the petition date). In addition, the Debtor testified that there are no water rights associated with the Property and that the road is impassible in bad weather conditions. No appraisal of the Property was offered by any party as evidence of value. Based on this evidence, it difficult for the Court to determine the value of the Property. The uncertain value of the Property combined with the fact that the Debtor's plan has the potential for additional payments based on his proposal to contribute 85% of monthly income from carpentry work in excess of $1000.00 to the plan, make it difficult for the Court to calculate and apply the best interest of creditors test.

As with all requirements necessary to confirmation, the Debtor bears the burden of proving that the plan meets the best interest of creditors test under 11 U.S.C. § 1325(a)(4). *In re Hutchinson,* ___ B.R. ___, 2006 WL 2848654, *5 (Bankr.D.Kan. 2006) ("Debtors bear the burden of proving that they have met all of the requirements of § 1325, including the 'best interest of the creditors' test under § 1325(a)(4).")(citation omitted); *In re Wolff,* 22 B.R. 510, 512-513 (9th Cir. BAP 1982), *per curiam,* (finding that the bankruptcy court improperly allocated the burden of proof regarding satisfaction of the best interest of creditor's test on the creditor); *In*

12

*re Hieb,* 88 B.R. 1019, 1020 (Bankr.D.S.D. 1988) ("The debtor has the burden of proof to establish all requisites for confirmation, including the requirements set forth in Sections 1325(a)(4) and 1322(a)(2).")(citation omitted). Other than the Notice of Valuation issued by Catron County, which reflects a value significantly lower than the value listed in Debtor's statements and schedules, the Debtor offered no evidence other than his own testimony to establish the value of the Property as reported in his statements and schedules. On the other hand, the broker's estimated value of the Property is significantly higher.

"The determination of the weight to be given to the opinion evidence of value is a matter within the discretion of the trier of fact." *In re Vokac,* 273 B.R. 553, 557 (Bankr.N.D.Ill. 2002)(citation omitted). The great disparity between the value estimated by a the broker and the value estimated by the Debtor suggests to the Court that the value of the Property is higher than the value the Debtor ascribes to the Property. However, as analyzed above, the Property need only be valued at the lower end of the broker's estimate to satisfy the best interest of creditors test. Based on this evidence, the Court cannot conclude as a matter of law that the Debtor has failed to meet his burden under 11 U.S.C. § 1325(a)(4). However, as discussed below, the plan nevertheless cannot be confirmed because Debtor has failed to sustain his burden of showing that the plan has been filed in good faith as required under 11 U.S.C. § 1325(a)(3).

    2. Good Faith.

In *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir. 1983), the Tenth Circuit adopted the following factors enunciated by the Eighth Circuit to determine whether the debtor has met the good faith requirement under 11 U.S.C. § 1325(a)(3):

    (1) the amount of the proposed payments and the amount of the debtor's surplus;

13

> (2) the debtor's employment history, ability to earn and likelihood of future increases in income;
> (3) the probable or expected duration of the plan;
> (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
> (5) the extent of preferential treatment between classes of creditors;
> (6) the extent to which secured claims are modified;
> (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;
> (8) the existence of special circumstances such as inordinate medical expenses;
> (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
> (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
> (11) the burden which the plan's administration would place upon the trustee.
>
> *Flygare v. Boulden,* 709 F.2d at 1347-1348 (quoting *United States v. Estus (In re Estus),* 695 F.2d 311, 317 (8th Cir. 1982)).

These factors are not the only factors relevant to a determination of good faith, and the weight to be given each factor will vary based on the facts and circumstances particular to each case. *Id.* The presence of one factor alone is insufficient to establish bad faith under a totality of circumstances approach. *In re Young,* 237 B.R. 791, 798 (10th Cir. BAP 1999), *aff'd on other grounds,* 237 F.3d 1168 (10th Cir. 2001) ("A single factor alone is not enough to establish bad faith.").

In light of these factors, and after review of the circumstances surrounding this case, the Court finds that the plan does not meet the good faith requirement of 11 U.S.C. § 1325(a)(3). The Court continues to remain troubled by a post-discharge conversion to Chapter 13. Although the receipt of a discharge under Chapter 7 does not impose an impediment to conversion under 11 U.S.C. § 707(a), "[t]he provisions of 11 U.S.C. § 1325 ensure that a Chapter 13 plan arising out of a conversion from Chapter 7 will be properly scrutinized by the bankruptcy court before

14

the plan is confirmed, mitigating the danger of abuse." *In re Young,* 237 F.3d 1168, 1174 (10th Cir. 2001). In this case, Debtor filed a chapter 13 proceeding after seeking to convert this case from Chapter 7 to Chapter 13. Instead of proceeding under the newly-filed chapter 13, the Debtor took no action in that case and the case was dismissed. Thus, instead of allowing for the orderly liquidation of the Debtor's assets by the Chapter 7 trustee in the Chapter 7 proceeding followed by separate reorganization proceeding under Chapter 13, the Debtor manipulated the bankruptcy system. The result is a quandary over whether the Debtor can obtain two discharges in the same bankruptcy case under different chapters, and whether the creditors of the estate must bear the cost of the administrative expenses of both trustees.

The plan is a minimal thirty-seven month plan. The Debtor argues that because he has already been forced to liquidate his non-exempt assets, the length of his plan is sufficient. However, given the size of the non-dischargeable debt in relation to other debts the Debtor proposes to pay through his plan, the plan's duration indicates that the Debtor is not making his best effort to repay his creditors, and that his primary consideration is to discharge the debt to the Renners. *Cf., In re Rasmussen,* 888 F.2d 703, 706 (10th Cir. 1989) (concluding that the chapter 13 plan which sought to discharge a single debt which was determined non-dischargeable in a preceding chapter 7 filing through de minimus payments, and where debtor was previously ineligible for Chapter 13 relief, was not filed in good faith).

Other than the claims of the IRS and AmBank, the primary debt to be dealt with in the Debtor's plan is the non-dischargeable debt due the Renners in the amount of $95,000.00. This is a significant factor in considering whether the plan is filed in good faith. *See, In re Larson,* 245 B.R. 609, 616 (Bankr.D.Minn. 2000) (noting that "[c]ourts must be especially careful in

15

determining whether there has been an unfair manipulation of the Code when a substantial portion of the claims to be discharged in the Chapter 13 case would not be dischargeable in a Chapter 7 case.") (citation omitted). Thus, while neither the duration of the plan, nor the nature of the debt is sufficient by itself to establish bad faith, taken together, both factors are relevant to the Court's determination that the Debtor has not proposed his plan in good faith. *See Young,* 237 B.R. at 788 and 799 (noting that the filing of a thirty-six month plan may be some circumstantial evidence of bad faith, it is only one factor which must be considered along with all the other evidence; an attempt to discharge a debt that would be non-dischargeable in a chapter 7 is bad faith *per se* unless combined with other factors which indicate an attempt to avoid paying creditors); *Rasmussen,* 888 F.2d at 706; *Hardin v. Caldwell (In re Caldwell),* 895 F.2d 1123, 1127 (6th Cir. 1990)(agreeing that "an attempt to discharge a debt under Chapter 13 which is not dischargeable in a Chapter 7 is not conclusive evidence that the Chapter 13 Plan was not made in good faith . . . . but that factor may be considered.") (citation omitted). This is particularly true in this case given the timing of the conversion of the case.

      Although the Debtor testified that he is making significantly more income than reported on his Schedule I, he has not amended his schedules. Nor did the Debtor give any indication at the final hearing on confirmation of the additional amounts he is likely to contribute under his proposal to contribute 85% of any income in excess of $1000.00 earned from carpentry work. The Debtor was unable to adequately explain why checks he received from his prior work at the bed and breakfast operated by his wife went uncashed for six months at a time. Nor was he able to adequately explain the income and expenses from work he performed in Hawaii. This inability to adequately explain income and finances indicates a lack of motivation and sincerity

16

on the part of the Debtor in maximizing the payments to creditors under a plan of reorganization.

With regard to the Property, it appears to the Court that the Debtor undervalued the Property. While it was not entirely clear from the evidence and testimony that the plan satisfies the best interest of creditors test, the Debtor's valuation of the Property indicates to the Court that his plan was not filed in good faith. If a chapter 13 reorganization allows a debtor to "buy out" non-exempt assets, then the Debtor must be willing to pay that value to creditors. *See Hutchinson,* 2006 WL 2848654 at *5 (noting that § 1325(a)(4) "essentially allows Chapter 13 debtors to 'buy-out' non-exempt, prepetition assets by paying their value to unsecured creditors with increased payments (or payments over a longer term) to the Trustee over the life of the plan."). Here, it appears the Debtor wishes to keep the Property but prevent the Renners from realizing the equity in that Property by making payments through a Chapter 13 plan. *Cf. Caldwell,* 895 F.2d at 1128 (finding that the debtor's bad faith in filing a plan which seeks to discharge a non-dischargeable debt was evidenced by the debtor's efforts to reduce assets available to pay creditors, and make minimal payments under his plan over the shortest possible plan period); *Larson,* 245 B.R. at 616-617 (concluding that the debtor did not propose his plan in good faith where the plan attempted to readjust a debt which would "quite possibly be nondischargeable" without accounting for the one asset that the creditor could recover outside of bankruptcy). The Debtor's plan proposes to contribute 85% of the income in excess of $1000.00 per month earned from carpentry, yet the Debtor offered little testimony as to what that amount might yield to creditors. Debtor testified that he presently charges $16.00 per hour for work and can work a forty-hour week, and that his monthly pay averages between $2000.00 and $2500.00 per month. He testified that he hopes to get back into contracting work, but right now he is just

17

working hourly.   In determining a debtor's good faith, "[t]he ultimate question is whether the debtor is attempting to thwart his creditors or is making an honest attempt to repay them." *Larson,* 248 B.R. at 616 (citation omitted).  The Court is not persuaded based on the Debtor's testimony and the evidence presented at the final hearing that the Debtor meets this standard.

Based on the totality of circumstances, the Court concludes that the Debtor has not proposed his plan in good faith.    Accordingly, the plan cannot be confirmed.

This opinion constitutes the Court's findings of fact and conclusions of law issued in accordance with Rule 7052, Fed.R.Bankr.P.  An order will be entered in accordance with this opinion.

_____
MARK B. McFEELEY
United States Bankruptcy Court

COPY TO:

R. Trey Arvizu III
Attorney for Debtor
PO Box 1479
Las Cruces, NM 88004-1479

Kelley L. Skehen
Chapter 13 Trustee
625 Silver Ave. SW, Suite 350
Albuquerque, NM 87102

James A Roggow
Attorney for Annette and Dale Renner
PO Drawer 1837
Las Cruces, NM 88004-1837